UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 2, 2015

LETTER TO COUNSEL

RE: *Kim Mary Elizabeth Winkler v. Commissioner, Social Security Administration*;
Civil No. SAG-14-2720

Dear Counsel:

On August 25, 2014, Plaintiff Kim Mary Elizabeth Winkler petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment, the Commissioner's supplemental brief in support of her motion, and Ms. Winkler's reply. [ECF Nos. 23, 28, 30, 31]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both parties' motions, reverse the Commissioner's judgment, and remand the case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Winkler filed a claim for Supplemental Security Income ("SSI") on December 21, 2010, alleging a disability onset date of November 10, 2004. (Tr. 166-74). Her claim was denied initially and on reconsideration. (Tr. 121-24, 126-28). A hearing was held on September 5, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 40-82). Following the hearing, the ALJ determined that Ms. Winkler was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 21-39). The Appeals Council denied Ms. Winkler's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Winkler suffered from the severe impairments of affective disorder, degenerative disc disease of the lumbar and cervical spine, asthma, fibromyalgia, and obesity. (Tr. 26). Despite these impairments, the ALJ determined that Ms. Winkler retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) involving lifting 10 pounds occasionally, less than 10 pounds frequently, standing and walking for 2 hours and sitting for about 6 hours in an 8-hour workday. The claimant can perform each of the following postural activities occasionally: climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling and climbing

*Kim Mary Elizabeth Winkler v. Commissioner, Social Security Administration*
Civil No. SAG-14-2720
June 2, 2015
Page 2

> ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to hazards, extreme cold, heat, vibration, fumes, odors, dusts, gases and poor ventilation. The claimant requires work, which involves routine, repetitive and unskilled tasks with occasional face to face interaction and little or no changes in the work setting.

(Tr. 29). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Winkler could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 34-35).

On appeal, Ms. Winkler raised a single argument regarding the ALJ's failure to consider in combination her non-severe impairment of ulcerative colitis and her complaints of pain. Pl. Mot. 9-13. Additionally, as addressed below, I have considered Ms. Winkler's case under the dictates of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), a Social Security appeal from the Eastern District of North Carolina, and under the dictates of Social Security Ruling ("SSR") 12–2p, governing cases involving fibromyalgia.[1] Because the ALJ's evaluation of Ms. Winkler's "moderate limitation" in concentration, persistence, or pace was inadequate under *Mascio*, and because the consideration of her fibromyalgia falls short of the analysis required by the relevant SSR, remand is warranted. In so holding, I express no opinion as to whether the ALJ's ultimate determination that Ms. Winkler was not entitled to benefits was correct or incorrect.

As background, on March 18, 2015, while Ms. Winkler's case remained pending, the United States Court of Appeals for the Fourth Circuit published its opinion in *Mascio.* In *Mascio,* the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which appeared relevant to the analysis of this case. Accordingly, on April 29, 2015, the Court afforded the Commissioner an additional 30 days to file a brief addressing the apparent *Mascio* issue. [ECF No. 29]. The Commissioner filed a supplemental brief on May 30, 2015. [ECF No. 30].

Pertinent to this case, the Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than "routine, repetitive and unskilled tasks with occasional face to face interaction and little to no changes in the work setting,"[2] despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to

---

[1] In Ms. Winkler's reply, she includes a credibility argument. Pl. Reply at 1-2. Because I am remanding the case, in part, on the inadequacy of the ALJ's fibromyalgia analysis, I need not separately address the credibility issue, which relates to Ms. Winkler's fibromyalgia symptoms.

[2] The hypothetical the ALJ posed to the VE in *Mascio* did not actually limit the claimant to unskilled work, and thus did not match the ALJ's RFC assessment. However, the VE indicated that all of the jobs cited in response to the hypothetical involved "unskilled work" such that, in effect, the hypothetical corresponded with the RFC assessment.

simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In this case, at step three of the sequential evaluation, the ALJ determined that, "with regard to concentration, persistence or pace," Ms. Winkler has "moderate difficulties." (Tr. 28). The entirety of the analysis states, "The claimant testified to experiencing increased forgetfulness and confusion. However, mental status examination showed the claimant's attention and concentration was intact. Moreover, the claimant reported she is able to shop in stores, pay bills and count change." *Id.* According to 20 C.F.R. § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4). The cursory analysis provided by the ALJ in Ms. Winkler's case suggests that the finding of "moderate difficulties" was based exclusively on Ms. Winkler's testimony that she experiences forgetfulness and confusion, since the remaining sentences in the analysis would suggest mild or no limitations.

However, in the section of the opinion containing the RFC assessment, the ALJ appears to discount Ms. Winkler's credibility, finding that "the claimant's mental impairments were medically managed and the record demonstrates third party reports of possible exaggeration in the claimant's alleged psychiatric symptoms . . . the undersigned concludes that the claimant's

subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision." (Tr. 32). The RFC assessment determined by the ALJ does not contain any limitations directed towards an issue with concentration, persistence, or pace. The limitations appear to address Ms. Winkler's moderate difficulties with social functioning. Without an understanding of why the ALJ reached contradictory conclusions about whether Ms. Winkler does or does not have moderate difficulties with concentration, persistence, or pace, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*.

In her supplemental brief, the Commissioner cites to medical evidence of record indicating that Ms. Winkler had no issues with attention, concentration, and memory. Def. Supp. Mot. 3 (citing Tr. 523, 548, 550, 555, 558). The Commissioner acknowledged that one consultative examiner found that Ms. Winkler's "sustained concentration and persistence appear to be limited." (Tr. 411). While the ALJ referred to that consultative examination in general, he did not expressly assign weight to the findings, nor did he make specific reference to the concentration/persistence determination. *See* (Tr. 31). Thus, what is lacking in the instant case is any explanation of why the ALJ assessed a moderate limitation in concentration, persistence, or pace. If, as the Commissioner suggests, the ALJ made the finding based solely upon Ms. Winkler's subjective allegations of issues with concentration, which the ALJ in fact did not credit, then the ALJ misapplied the special technique described above. The conclusions at step two are supposed to represent reasoned consideration of all of the pertinent evidence, and are not simply an opportunity to give the claimant the benefit of the doubt at one step while taking it away at the next step. Without understanding why the ALJ believed Ms. Winkler to have a moderate limitation in concentration, persistence, or pace, as opposed to a mild limitation or no limitation, and without understanding how the ALJ evaluated the consultative examiner's conclusion that she had limited ability to sustain concentration and persistence, I cannot ascertain whether the moderate limitation found by the ALJ would warrant any RFC restrictions in Ms. Winkler's ability to perform or sustain even unskilled work. Thus, on remand, the ALJ should consider the appropriate level of limitation in the area of concentration, persistence, or pace and, if a moderate limitation is again found, should explain the reasons for that finding in order to permit an adequate evaluation of the moderate limitation under the dictates of *Mascio.*

In addition, the nature of fibromyalgia means that a patient's ability to perform certain tasks or postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks and maneuvers on a sustained basis. SSR 12–2p, which became effective on July 25, 2012, governs the evaluation of fibromyalgia in disability claims. SSR 12–2p, 2012 WL 3104869 (July 15, 2012). It emphasizes consideration of the "longitudinal record" of fibromyalgia "whenever possible because the symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12–2p, at *6. Thus, the fact that Ms. Winkler had the ability to ambulate normally or had a low pain rating at isolated medical appointments does not disprove her allegations of persistent debilitating pain. On remand, the ALJ should provide a more extensive explanation of his consideration of Ms. Winkler's physical impairments from fibromyalgia, her credibility regarding her description of those impairments,

*Kim Mary Elizabeth Winkler v. Commissioner, Social Security Administration*
Civil No. SAG-14-2720
June 2, 2015
Page 5

and the effect, if any, of those conditions on her ability to sustain the demands of full time employment during all or part of the lengthy time frame since her alleged onset date.

With respect to the argument Ms. Winkler raised, I generally find that the ALJ provided adequate evidentiary support for his consideration of Ms. Winkler's non-severe impairment of ulcerative colitis in combination with her other impairments. However, as discussed above the analysis of her assertions of pain, particularly those assertions related to her fibromyalgia diagnosis, requires further explanation.[3]

For the reasons set forth herein, Ms. Winkler's Motion for Summary Judgment [ECF No. 23] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 28] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[3] Although not dispositive here, I further reject the ALJ's reliance on the VE's testimony that the job of "document preparer," with DOT #249.587-018, exists in significant numbers in the national economy. The VE relied on the Dictionary of Occupational Titles ("DOT"), a document published by the United States Department of Labor and last updated in 1991. United States Department of Labor, Dictionary of Occupational Titles (4th Ed., Rev.1991), available at http://www.oalj.dol.gov. According to the DOT, the job of document preparer consists of, in relevant part, a person who "prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices." As decided by the Sixth Circuit in *Cunningham v. Astrue*, 360 Fed. App'x 606, 615 (6th Cir. 2010), and by this Court in *Czosnowski v. Comm'r, Soc. Sec.*, Civil No. RDB-13-1467, 2014 WL 1660083, at *4 (D. Md. April 23, 2014),when the descriptions of positions in the DOT appear obsolete, a more recent source of information should be consulted to establish substantial evidence of the continued existence of the position. Thus, on remand, the ALJ should not rely exclusively on VE testimony to suggest that the position of "document preparer" is viable, absent evidence that the VE relied on sources more current than the DOT.